UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LISA HORN-BRICHETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-163 |
| | ) | |
| TIFFANY SMITH, RUSSELL | ) | |
| JOHNSON, and BECKY RUPPE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a civil lawsuit brought by the *pro se* plaintiff Lisa Horn-Brichetto pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the defendants in their individual and official capacities. There are currently a number of motions pending before the Court including: (1) Defendants Tiffany Smith and Russell Johnson's Motion to Dismiss, [Doc. 26]; (2) John Brichetto's Motion to Intervene, [Doc. 31]; (3) Plaintiff's Objection to the Magistrate Judge's Order Quashing Subpoena and Motion to Reconsider, [Doc. 38]; (4) Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction, [Doc. 43]; (5) Plaintiff's Motion to Collect Cost of Service, [Doc. 59]; (6) Defendant Becky Ruppe's Motion to Set Aside Entry of Default, [Doc. 62]; and (7) Defendants Tiffany Smith and Russell Johnson's Motion to Stay Compliance with Order, [Doc. 63]. The Court will take up the dispositive motion first in this memorandum opinion, and then proceed to the remaining motions as necessary.

## I.    FACTS

According to the plaintiff's complaint, this case arises out of statements made in a letter sent by the defendants to the Tennessee Board of Parole regarding the early release of Mr. John

Brichetto, the plaintiff's husband. Mr. Brichetto was a director and sole shareholder of Northington Energy LLC. [Doc. 2 at ¶ 11]. Northington anticipated opening a biodiesel production facility in Morgan County, Tennessee, and at some point, it obtained a loan from the State of Tennessee through the Feedstock Loan Program to develop this facility. [*Id*. at ¶¶ 13 and 21]. There were delays in the opening of this biodiesel production facility, and both Mr. Brichetto and the plaintiff made statements to the press blaming the Morgan County officials, including defendant Becky Ruppe, the then-Morgan County Executive, for the delays. [*Id*. at ¶ 22 and Doc. 2-1 at PageID # 59]. On July 8, 2015, Mr. Brichetto and the plaintiff were convicted of theft due to the failure to repay the Northington Energy loan on time. [Doc. 1 at ¶ 15].[1] The plaintiff was sentenced to judicial diversion, six years state probation, and ordered to pay restitution. [*Id*. at ¶ 16]. Mr. Brichetto was sentenced to ten years in the Tennessee Department of Correction. [*Id*. at ¶ 17]. The defendant Becky Ruppe ran a campaign in 2008 for the 12th District Tennessee State Senate seat. [*Id*. at ¶ 23]. The plaintiff alleges that defendant Ruppe blames the plaintiff and Mr. Brichetto for her loss in this election because of the events surrounding the Northington Energy incident. [*Id*. at ¶¶ 22 and 26]. The plaintiff further alleges that, after defendant Ruppe's loss in the election, defendant Ruppe and defendant Russell Johnson—the District Attorney General for the Ninth Judicial District—agreed to bring criminal charges against the plaintiff and Mr. Brichetto. [Doc. 2 at ¶¶ 28 and 29]. Assistant District Attorney General Tiffany Smith was the prosecutor who handled the criminal case against the plaintiff and Mr. Brichetto. [*Id*. at ¶ 30].

---

[1] The Court notes that, although the complaint alleges this fact as stated, the attachments to the complaint outline a much more detailed version of the events leading to the convictions of Mr. Brichetto and the plaintiff. The attachments convey that the plaintiff was involved in a criminal enterprise with Mr. Brichetto which deceived state and local officials to appropriate grants for the construction of the biodiesel plant and pocketed the grant money instead of purchasing the equipment necessary to construct and operate the plant. [Doc. 2-1 at PageID # 68-69]. *See Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ("However, a court may consider exhibits attached to the complaint, public records, items appearing the in record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment.") (internal quotation marks and alterations omitted).

On December 13, 2016, Mr. Brichetto had a scheduled hearing before the Tennessee Board of Parole. [*Id.* at ¶ 32]. On November 22, 2016, defendant Smith wrote a letter to the Tennessee Board of Parole on behalf of the Office of the District Attorney General of the Ninth Judicial District objecting to any early release of Mr. Brichetto. [*Id.* at ¶ 33 and Doc. 2-1 at PageID # 74-80]. The letter specifically refers to both Mr. Brichetto and the plaintiff, and outlines the District Attorney General's Office's perspective of the criminal enterprise that Mr. Brichetto and the plaintiff were involved in. [Doc. 2 at ¶ 34 and Doc. 2-1 at PageID # 74-80]. Additionally, the letter outlines a number of lawsuits that Mr. Brichetto has been involved in, characterizing Mr. Brichetto and the plaintiff as having "extensive knowledge and experience with the justice/legal system that parallel the offense(s) in this case and is demonstrative of additional conduct, even if none have, thus far, resulted in criminal convictions." [Doc. 2 at ¶ 39 and Doc. 2-1 at PageID # 75]. The plaintiff alleges that she "lawfully and legitimately used the courts to resolve civil suits at equity and law," but claims that she was uninvolved with "most every case" outlined in the letter. [Doc. 2 at ¶¶ 40, 41-63, 79, 88, 107, and 114]. The plaintiff alleges that many of the statements made in the letter are false, denigrating, and injurious. [*Id.* at ¶ 64].

The plaintiff asserts twelve different causes of action against all three defendants in her complaint, including: (1) conspiracy to retaliate for statements to the press; (2) conspiracy to retaliate for civil litigation; (3) conspiracy to deny access to the courts; (4) conspiracy to subject to cruel and unusual punishment; (5) retaliation related to statements to the press; (6) retaliation related to civil litigation; (7) access to the courts; (8) cruel and unusual punishment; (9) defamation; (10) false light invasion of privacy; (11) intentional infliction of emotional distress; and (12) negligent infliction of emotional distress. [Doc. 2 at ¶¶ 69-148]. As to her requested relief, the plaintiff seeks a declaratory judgment stating that the defendants' actions violated her

First and Eighth Amendment Constitutional rights as well as constituted the state law torts of defamation, negligent infliction of emotional distress, intentional infliction of emotional distress, and false light invasion of privacy; an injunction ordering defendants to retract the letter and inform the Tennessee Board of Parole that the plaintiff has not been charged with any additional crimes, has not violated any of her conditions of probation, has made monthly payments toward restitution, and has had no involvement in any criminal activity; compensatory damages; and punitive damages. [*Id*. at PageID # 56].

## II. DISCUSSION

### MOTION 1. Defendant Tiffany Smith and Russell Johnson's Motion to Dismiss

The defendants Tiffany Smith ("Smith") and Russell Johnson ("Johnson") have filed a motion to dismiss the plaintiff's complaint in its entirety as to them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The plaintiff has responded—albeit untimely—to the defendants' motion to dismiss, [Doc. 32]. This motion is now ripe for disposition.

The defendants Russell Johnson and Tiffany Smith move to dismiss the complaint on a number of grounds arguing: (a) that they are entitled to Eleventh Amendment Immunity for all claims seeking monetary damages and that, as state officials, all claims for money damages against them in their official capacities are unauthorized claims against the state; (b) that the federal claims (counts I-VIII) against them in their individual capacities fail to state a claim upon which relief can be granted; (c) that the state law claims should be dismissed on account of (i) prosecutorial immunity, (ii) absolute litigation privilege, and/or (iii) plaintiff being libel-proof; and (d) the Court should alternatively decline to exercise supplemental jurisdiction over the state law claims and dismiss them. The Court will take up these arguments in turn.

### A. Eleventh Amendment Immunity for Claims Against Defendants in their Official Capacities

The defendants' first argument seeks to dismiss the plaintiff's claims for money damages against the defendants in their official capacities arguing that such claims are barred by the Eleventh Amendment. The plaintiff responds to the defendants' argument that "Plaintiff's intent was to sue in the official capacity for injunctive relief **only**." [Doc. 32 at PageID # 156]. The plaintiff acknowledges that claims against defendants in their official capacity as agents of the state under 42 U.S.C. § 1983 seeking monetary relief are subject to dismissal, but contends that she has only brought claims for monetary damages against the defendants in their *individual* capacities. [Doc. 32 at PageID # 155-56].

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Indeed, the Supreme Court has consistently held that the Eleventh Amendment bars suits for monetary relief against state officials sued in their official capacity. *See Edelman v. Jordan*, 415 U.S. 651, 661-63 (1974); *Quern v. Jordan*, 440 U.S. 332, 338-39 (1979); *see also Bernt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986) (affirming district court's dismissal of § 1983 suit brought against state entities which potentially sought state treasury funds).

The Court agrees with both parties that any claims that may be present within the plaintiff's complaint seeking monetary relief from the defendants in their official capacities are barred by the

Eleventh Amendment. Therefore, assuming that the complaint includes such claims seeking monetary recovery from the defendants in their official capacities, said claims are hereby **DISMISSED**.

Of course, the Eleventh Amendment does not bar actions against defendants in their official capacities seeking injunctive relief or for damages against the defendants individually. *See Will*, 491 U.S. at 71 n.10; *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *see also Wolfel v. Morris*, 972 F.2d 712, 718-19 (6th Cir. 1992) ("A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because the official-capacity actions for prospective relief are not treated as actions against the State.") (alteration and internal quotations omitted). An injunction as a remedy "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (internal quotations omitted). In a footnote, the defendants argue that the plaintiff's claims seeking declaratory and injunctive relief against them in their official capacity should also be dismissed because there is no showing of irreparable injury. [Doc. 27 at PageID # 131 n.4].

The Court recognizes that the defendants make little showing for this argument in their brief. Although the plaintiff does not directly respond to the issue of whether she has made a showing of irreparable injury in her request for injunctive relief, it does not appear beyond doubt that the plaintiff could prove no set of facts which would entitle her to relief as to this claim. The Court is not inclined to dismiss the plaintiff's claims on this basis, and such request is **DENIED**.[2]

---

[2] *But see infra* Discussion II. Motion 1.B.

**B. Failure to State a Federal Claim (Counts I-VIII) Upon Which Relief Can be Granted**

The defendants next argue that the plaintiff's federal claims against them in their individual capacities should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

To survive a 12(b)(6) motion, the plaintiff must allege in her complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To that end, the plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. at 555. "A complaint can survive a Rule 12(b)(6) motion to dismiss without having detailed factual allegations, but the complaint must contain more than conclusions and an unsubstantiated recitation of the necessary elements of a claim." *McCormic v. Miami University*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 570). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). However, this Court is not required to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Initially, the defendants assert that almost all of the plaintiff's federal claims, aside from Counts IV and VIII, are First Amendment retaliation claims based on the letter sent by defendant Smith to the Tennessee Board of Parole. The plaintiff takes issue with this characterization of the complaint, arguing that she has only asserted two claims for retaliation, Counts V and VI. Clearly,

Count I (conspiracy to retaliate for statements to the press), Count II (conspiracy to retaliate for civil litigation), Count V (retaliation related to statements to the press), and Count VI (retaliation related to civil litigation) are all some form of retaliation claims.

As it pertains to the plaintiff's federal claims, the Court disagrees with the defendants that all of the plaintiff's federal claims (aside from Counts IV and VIII) may be grouped together as a First Amendment retaliation claim based on the letter. *See* [Doc. 27 at PageID # 132]. Rather, in the Court's reading, the plaintiff has asserted two (related) retaliation claims based on the deprivation of her First Amendment right to speech—Counts I (conspiracy to retaliate for statements to the press) and V (retaliation related to statements to the press)—and four (related) retaliation claims based on the deprivation of her right of access to the courts—Counts II (conspiracy to retaliate for civil litigation), III (conspiracy to deny access to the courts), VI (retaliation for civil litigation), and VII (access to the courts).[3] The appropriate analysis of the plaintiff's retaliation claims for denial of her right of access to the courts will be different than the plaintiff's right to speech retaliation claims. Consequentially, the application of the elements of a retaliation claim "will yield variations in different contexts," *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), and the Court will consider the plaintiff's related claims respectively, separate and apart from the other asserted claims.

42 United States Code § 1983 "provides a remedy for constitutional violations committed by state actors." *Thaddeus-X*, 175 F.3d at 386. "To survive a motion to dismiss a claim under [] § 1983, the plaintiff must properly allege two elements: (1) the defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal

---

[3] The Court agrees with the parties that Counts IV (conspiracy to subject to cruel and unusual punishment) and VIII (cruel and unusual punishment) are not retaliation claims. The defendants only include argument for dismissal of these claims in their prosecutorial immunity section, which is considered in this memorandum opinion *infra* Discussion II. Motion 1.B.iii.

law." *Mezibov v. Allen*, 411 F.3d 712, 716-17 (6th Cir. 2005) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Here, the defendants do not take issue with the first element of a § 1983 claim. After its own review of the plaintiff's complaint, the Court finds that the plaintiff has sufficiently alleged that the defendants were acting under color of state law for purposes of 42 U.S.C. § 1983, and this first element is satisfied.

As to the second element, there is no question that actions taken by governmental actors, "which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* Indeed, "an act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch*, 156 F.3d at 681-82 (quoting *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). Consequentially, § 1983 provides a remedy for these wrongs as well. As the Sixth Circuit outlined in *Thaddeus-X*,

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. This formulation describes retaliation claims in general, but it will yield variations in different contexts.

*Thaddeus-X*, 175 F.3d at 394 (internal citations omitted); *see also Bloch*, 156 F.3d at 677-78. These three elements can be qualified as sub-elements of the second element of a § 1983 action the plaintiff must sufficiently allege to survive the defendant's 12(b)(6) motion. *See Mezibov*, 411 F.3d at 717 (considering the three elements for retaliation by state actor for plaintiff's exercise of constitutional right as sub-elements of second element of plaintiff's § 1983 claim).

i.    **Failure to State a Claim in Counts I (Conspiracy to Retaliate for Statements to the Press) and V (Retaliation Related to Statements to the Press)**

Generally, the defendants argue that the plaintiff's complaint fails to state a claim because the defendants did not retaliate against plaintiff for exercising her First Amendment rights. In essence, the defendants assert that the letter sent to the Tennessee Board of Parole was for "informational purposes," and "not in an attempt to impugn the plaintiff's character to a large public audience." [Doc. 27 at PageID # 133].

Regarding the first sub-element, that is that the plaintiff engaged in protected conduct, the plaintiff alleges that her statements made to the press blaming delays in the opening of the Northington biodiesel production facility were constitutionally protected activity. The defendants do not argue that the plaintiff's statements to the press would not qualify as a constitutionally protected activity. In this Court's view, there is no doubt that, taking the plaintiff's allegations as true, the First Amendment clearly protects the plaintiff's right to criticize the officials of Morgan County. *See Bloch*, 156 F.3d at 678 (recognizing that plaintiff's criticism of public official was protected activity in § 1983 action); *see also Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 588 (6th Cir. 2008) ("Speech is generally protected by the First Amendment, with restrictions on only limited types of speech, such as obscenity, defamation, and fighting words."). The allegations of the plaintiff's complaint satisfy the first sub-element.

Secondly, the plaintiff must allege that "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. The plaintiff alleges that the adverse action taken against her were the defamatory statements made in the letter to the Tennessee Board of Parole. In essence, the

plaintiff's position is that a person of ordinary firmness would be deterred from engaging in the protected activity—that is, criticizing officials through statements made to the press—when a letter containing defamatory remarks is sent to the Tennessee Board of Parole.

Not every action may be recognized as constitutionally cognizable. *Thaddeus-X*, 175 F.3d at 396. In *Thaddeus-X*, the Sixth Circuit adopted the standard to determine whether an action is constitutionally cognizable by stating that "an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). The level of harassment necessary to deter is generally not extreme. *Id.* This sub-element "is intended to weed out only inconsequential actions." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 398).

In viewing the facts of the complaint in the light most favorable to plaintiff, and in accepting such alleged facts as true for purposes of this Rule 12(b)(6) motion, the Court finds that the allegations within the complaint satisfy the second sub-element for these claims. The complaint alleges, and this Court must here accept, that the letter makes multiple false, denigrating, and injurious statements regarding the plaintiff. [Doc. 2 at ¶¶ 36 and 64]. Further, the complaint alleges that the plaintiff has suffered significant injury as a result of the statements made in the letter. [*Id.* at ¶¶ 65-68]. Although not of an extreme nature as some retaliation claims can be,[4] the Court recognizes that an official defaming a private individual in an official letter to another governmental agency is significant. Indeed, "harassment or publicizing facts damaging to a

---

[4] *See Thaddeus-X*, 175 F.3d at 398-99 (Plaintiff alleged that he was subject to harassment, physical threats, and transfer to the area of prison used to house mentally disturbed inmates); *Bloch*, 156 F.3d at 681 (Plaintiff averred that defendant released confidential, private, embarrassing and humiliating information regarding a rape she experienced to the public).

person's reputation," may suffice to deter a person of ordinary firmness in the right context. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). In the Court's view, it is of no consequence that the plaintiff may have "voluntarily placed herself open to criticism of her actions" as the defendants argue, [Doc. 27 at PageID # 134], because the standard requires the Court to consider whether *a person of ordinary firmness* would be deterred from engaging in the protected conduct, not whether the plaintiff herself was actually deterred. *See Mezibov*, 411 F.3d at 721-22. The Court finds that the complaint sufficiently alleges that an adverse action was taken against plaintiff which would deter a person of ordinary firmness from continuing to engage in that conduct. The allegations of the complaint satisfy the second sub-element as to these claims.

The third sub-element is generally categorized as the causation element because it requires the plaintiff to allege that the adverse action was motivated (or caused), at least in part, by the plaintiff's protected conduct. The defendants argue that any statements made about the plaintiff in the letter were made as part of the District Attorney General's Office's objection to John Brichetto's early release from prison, not in retaliation against plaintiff's protected conduct. The plaintiff responds that "the complaint alleges facts that support a political motive for revenge as a motivating factor." [Doc. 32 at PageID # 158]. The facts alleged in the plaintiff's complaint do not align with the plaintiff's argument here.

"A 'motivating factor' . . . is one without which the action being challenged simply would not have been taken." *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002). "Proof of an official's retaliatory intent rarely will be supported by direct evidence of such intent[;]" accordingly "circumstantial evidence may provide sufficient evidence of retaliatory intent," to survive summary dismissal. *Holzemer*, 621 F.3d at 525-26.

Given the 12(b)(6) standard, the Court must "determine whether *any given* set of facts could sustain the retaliation claim as alleged by the [plaintiff]." *Bloch*, 156 F.3d at 681 (emphasis added). The Court must accept the factual allegations made in the plaintiff's complaint as true. *Grindstaff*, 133 F.3d at 421. The Court need not, however, "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Here the plaintiff has alleged that "[o]n information and belief, the defamation of the plaintiff was motivated, at least in part, by her statements to the press. *See ¶* 23-31." [Doc. 2 at ¶ 103]. This is undoubtedly a legal conclusion couched as a factual allegation, and the Court declines to accept it as true without more.[5] As to the facts supporting this legal conclusion, the plaintiff alleges that she made statements to the press blaming the delays of the opening of the Northington biodiesel facility on Morgan County officials, [Doc. 2 at ¶ 22], that the collapse of the biodiesel plant was used against defendant Ruppe in her 2008 campaign for a state senate seat by her political opponents, [*Id*. at ¶ 23 and Doc. 2-1 at PageID # 67 and 70], that "[o]n information and belief, defendant Ruppe blames the Plaintiff and Mr. Brichetto for losing the state senate election," [*Id*. at ¶ 26], that "[o]n information and belief, defendant Johnson also blames the Plaintiff and Mr. Brichetto for defendant Ruppe's election loss," [*Id*. at ¶ 27], that "defendant Smith prosecuted Plaintiff and Mr. Brichetto," [*Id*. at ¶ 30], and that "[o]n information and belief, defendants Ruppe, Johnson, and Smith agreed to make false, denigrating, and injurious statements about plaintiff," [*Id*. at ¶ 31].

As is usual for retaliation claims, nothing in the letter provides *direct evidence* of the official's retaliatory intent. *See Holzemer*, 621 F.3d at 525-26. As such, the plaintiff relies on the circumstantial evidence above to show that the statements she made to the press were at least a

---

[5] Indeed, the Sixth Circuit classifies such "information and belief" allegations as "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

motivating factor in the defendants' adverse action. Here, the Court finds that the circumstantial evidence alleged, even when accepted as true, is insufficient to satisfy this third sub-element of causation as to these claims. To begin with, the plaintiff alleges that *the collapse of the biodiesel plant* was the underlying justification for defendant Ruppe's animus towards the plaintiff. Indeed, the plaintiff has *not* alleged that *the statements she made to the press* were the reason that Ruppe lost the election. As plaintiff alleges, "[t]he articles also indicate that defendant Ruppe's political opponents used *the delays* against her in her 2008 campaign for the 12th District state senate seat." [Doc. 2 at ¶ 23 (emphasis added)]; *see also* [Doc. 2-1 at PageID # 67 and 70]. The plaintiff's statements are not alleged to have induced Ruppe's hostility towards the plaintiff; rather, it was the delay or collapse of the biodiesel plant project which caused Ruppe's blaming the plaintiff for her election loss. Neither does the plaintiff allege that her statements were the cause of the delays or the collapse of the biodiesel plant project. In essence, regardless of whether the plaintiff made the protected statements to the press, the collapse of the biodiesel plant project would have occurred. The plaintiff's statements are not alleged to have had any impact on the delay or collapse of the plans, and logically, made no difference in whether Ruppe lost the election.

Secondly, there is nothing in the letter itself which contains any direct or inferential facts suggesting that it was written out of retaliation for the plaintiff's statements to the press. Indeed, the letter goes through significant detail of the Attorney General Office's understanding of Mr. Brichetto and plaintiff's criminal enterprise leading to the imprisonment of Mr. Brichetto; however, it never makes any reference (either direct or inferential) to any statements made by the plaintiff to the press concerning the biodiesel plant. Even with careful scrutiny, there is absolutely nothing contained within the letter itself tangentially linking the plaintiff's statements to the press as a reason (or motive) for the letter.

Lastly, the Court returns to this Circuit's consideration of "motivating factor," which is "one without which the action being challenged simply would not have been taken." *Greene*, 310 F.3d at 897. The plaintiff makes no allegation nor provides any facts at all to suggest that the letter itself, even as written, would not have been provided to the Tennessee Board of Parole absent her statements to the press. As there is no factual connection between the plaintiff's statements to the press and the "political motive for revenge as a motivating factor," [Doc. 32 at PageID # 158], the plaintiff's argument on causation entirely misses the mark. Outside of this legal conclusion, there are no facts contained within the complaint which would even suggest that the letter to the Tennessee Board of Parole would not have been written absent the plaintiff's statements to the press. Therefore, the third sub-element is not sufficiently alleged for these claims.

As to the plaintiff's claim of conspiracy to retaliate for the statements she made to the press, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). In the instant case, the plaintiff alleges that "[o]n information and belief, defendants agreed on a coarse [sic] of conduct that violates the statute. *See* ¶ 31." [Doc. 2 at ¶ 70]. This is plainly insufficient to satisfy the degree of specificity needed to support a civil conspiracy claim, but rather falls within the "vague and conclusory allegations unsupported by material facts" this Court need not accept. *See id*; *see also 16630 Southfield Ltd. P'ship*, 727 F.3d at 506. Particularly, the fact this legal conclusion refers to for support is simply a general, non-specific conclusion that "[o]n information and belief, defendants Ruppe, Johnson, and Smith agreed to make false, denigrating, and injurious statements about the plaintiff." [Doc. 2 at ¶ 31]. The Court's analysis above on the third sub-element further details the lack of factual

support for the plaintiff's conspiracy claim in Claim I. The Court finds that the complaint is wholly insufficient to state a claim for conspiracy to retaliate for statements the plaintiff made to the press.

In summary, the plaintiff's statements to the press criticizing the Morgan County officials for delay in the opening of the Northington biodiesel facility were unquestionably protected activity under the First Amendment. Additionally, taking the plaintiff's allegations as true, the adverse action taken by the defendants would, in this Court's view, be sufficiently severe to deter a person of ordinary firmness from continuing to engage in the protected activity. However, the plaintiff has failed to allege sufficient facts showing that the adverse action taken by the defendants was motivated, at least in part, by the plaintiff's protected conduct. Therefore, the plaintiff has failed to allege sufficient facts to support a claim of retaliation for exercising her free speech rights to criticize public officials to the press. Additionally, plaintiff's conspiracy claim is not pled with any degree of specificity, is unsupported by material facts, and likewise equally fails. Accordingly, Claim I and Claim V will be **DISMISSED** on these grounds.

> ii. **Failure to State a Claim in Counts II (Conspiracy to Retaliate for Civil Litigation), III (Conspiracy to Deny Access to the Courts), VI (Retaliation for Civil Litigation), and VII (Access to the Courts)**

As to the plaintiff's retaliation claims related to her access to the courts, the three sub-elements outlined in *Thaddeus-X* also apply. Of course, the Court has separated these claims from the claims related to the statements made to the press because application of these sub-elements "will yield variations in different contexts." *Thaddeus-X*, 175 F.3d at 394.

Applying the first sub-element, requiring the plaintiff to allege that she engaged in a constitutionally protected activity, "[i]t is beyond dispute that the right of access to the courts is a

fundamental right protected by the Constitution." *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986). Indeed, "[a]ccess to courts does not only protect one's right to physically enter the courthouse halls, but also insures that the access to courts will be 'adequate, effective and meaningful.'" *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) (quoting *Bounds v. Smith*, 430 U.S. 817, 811 (1977)). Therefore, "interference with or deprivation of the right of access to the courts is actionable under § 1983." *Graham*, 804 F.2d at 959.

Here, the plaintiff has alleged that the protected conduct for which she was retaliated against was her use of the courts to resolve civil suits at equity and law. [Doc. 2 at ¶¶ 79-81, 88-89, 107-109, and 114-115]. There is no doubt that the plaintiff's right of access to the courts is constitutionally protected, and the defendants do not argue otherwise. The first sub-element of these claims is sufficiently pleaded.

As with the claims for retaliation for her statements to the press, the second sub-element requires the plaintiff to allege that "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. The same standard set out above applies to these claims. *See generally Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) *and Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010). Here, in the Court's view, the application of these standards yield the same result as her claims for retaliation for her statements to the press. Indeed, the plaintiff makes the same general allegations as to the defendants' adverse action for her statements to the press as for her use of the courts. The complaint alleges that the defendants published false and injurious statements about the plaintiff. In all, since the complaint makes the same allegations as to the adverse action taken against the plaintiff, the Court's reasoning above similarly applies to the plaintiff's claims related

to her use of the courts.[6]  The Court finds the allegations of the complaint satisfy the second sub-element.

Lastly, the plaintiff must allege sufficient facts to satisfy the third sub-element: a causal connection between sub-element one and two.  Here, the analysis is slightly different than the prior claims because here there is, at the very least, a *mention* of civil lawsuits that the plaintiff was involved in within the letter.  *See* [Doc. 2-1 at PageID # 75-76].  Application of the standard ultimately yields a different conclusion for these claims.

As previously set out, "[a] 'motivating factor' . . . is one without which the action being challenged simply would not have been taken."  *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002).  "Proof of an official's retaliatory intent rarely will be supported by direct evidence of such intent[;]" accordingly "circumstantial evidence may provide sufficient evidence of retaliatory intent," to survive summary dismissal.  *Holzemer*, 621 F.3d at 525-26.  As with all 12(b)(6) motions, the Court is not required to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Again, the complaint is riddled with legal conclusions couched as factual allegations as to causation, stating for Claims II and VI, "[o]n information and belief, the defamation of the plaintiff was motivated, at least in part, by her use of the courts.  This can be inferred from the Defamatory letter itself.  *See* ¶¶ 38.-40," [Doc. 2 at ¶¶82 and 110], and stating for Claims III and VII, "[t]herefore, it can be inferred that they intended to interfere with Plaintiff's ability to access the courts. *See* ¶ 33." [*Id*. at ¶¶ 89 and 115].

After careful review, the Court finds that the complaint has, in the most minimal way, alleged causation for these claims.  Admittedly, the Court is strained to find any significant

---

[6] *See supra* Discussion II. Motion 1.B.i.

inference within the allegations regarding the motivation to retaliate for her use of the courts. However, unlike her claims for retaliation for her statements to the press, the letter at least overtly sets out three civil cases in which the plaintiff was involved. The Court may not dismiss these claims unless there are *no* set of facts which would entitle the plaintiff to relief; and if the plaintiff's use of the courts in those three civil cases was at least *a motivating factor* in making the alleged false statements in the letter, then the plaintiff's claims must survive the 12(b)(6) motion. Based on the complaint's allegations, it is possible that the civil lawsuits were at least a motivating factor in writing the letter as it appears.

Having found that the plaintiff has alleged sufficient facts to allow for the inference that the letter was motivated, at least in part, by her use of the courts—only in that the letter makes mention of the civil lawsuits and that the inference may be drawn assuming the plaintiff's alleged facts are true—the Court will **DENY** the defendants' motion as to these claims on this basis.[7]

### iii. Absolute Prosecutorial Immunity

The defendants further argue that all of the plaintiff's § 1983 claims should be dismissed as to them because they enjoy absolute immunity from civil liability for § 1983 actions as prosecutors.[8] The plaintiff refers to the discussion in her complaint regarding prosecutorial immunity, and argues that because she was not a party to the parole proceeding, the references to her in the letter were irrelevant, and the defendants do not enjoy prosecutorial immunity. [Doc. 32 at PageID # 158].

---

[7] The Court notes that, as to the plaintiff's conspiracy claims related to her use of the courts (Claims II and III), it is also unlikely that plaintiff has alleged sufficient facts to satisfy the degree of specificity required of civil conspiracy claims. *See Spadafore*, 330 F.3d at 854. However, given the Court's findings as to prosecutorial immunity, *see infra* Discussion II. Motion 1.iii., as well as the potential overlap these issues may have with the surviving claims against the remaining defendant Becky Ruppe, the Court will decline to consider these particular issues at this stage of the proceedings.

[8] These arguments apply to all of plaintiff's federal claims against defendants, whether brought against them in their official or individual capacity claims, or whether seeking injunctive or monetary relief.

As the plaintiff sets out in her complaint, the Supreme Court first addressed the issue of prosecutorial immunity to § 1983 actions in the case of *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). There, after outlining the public policy considerations of extending absolute immunity from civil suit, the Supreme Court specifically held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler*, 424 U.S. at 431. The Court specifically limited the extension of this absolute prosecutorial immunity to "initiating a prosecution and [] presenting the State's case," *id.*, and in fact, subsequent decisions have clarified that "when a prosecutor functions as an administrator rather than as an officer of the court he is entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (internal quotation marks omitted).

"Absolute immunity is the exception rather than the rule, and has traditionally been reserved for those actors 'intimately associated with the judicial phase of the criminal process.'" *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999)). The Sixth Circuit has clarified some of the circumstances under which a prosecutor is acting as an officer of the court rather than an administrator or investigator, stating

> Since the [Supreme] Court's decision in *Imbler*, courts have taken a functional approach to absolute immunity. Using this approach, courts have concluded that a prosecutor is protected in connection with his duties in functioning as a prosecutor. Accordingly, prosecutors are absolutely immune from many malicious prosecution claims. Likewise, absolute immunity is appropriate for claims based on the prosecutor's appearance at a probable cause hearing and before a grand jury.

*Spurlock v. Thompson*, 330 F.3d 791, 797-98 (6th Cir. 2003) (internal citations and quotations omitted). In essence, "[t]he analytical key to prosecutorial immunity . . . is advocacy-whether the actions in question are those of an advocate." *Id.* at 798. Indeed, "the critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately

associated with the judicial phase of the criminal process." *Id.* (emphasis in original) (quoting *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000)).

Of course, "the line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000)). However, the case law provides some guidance to help the Court determine where that line is appropriately drawn. Conduct by a prosecutor which has been found to be investigative or administrative in function include "giving legal advice to police; making out-of-court statements at a press conference; making statements in an affidavit supporting an application for an arrest warrant; and authorizing warrantless wiretaps in the interest of national security." *Id.* (internal quotations and citations omitted). "On the other hand, prosecutors have absolute immunity from suits for malicious prosecution and for defamation, and . . . this immunity extends to the knowing use of false testimony before the grand jury and at trial." *Id.* (internal quotations and citations omitted).

The Sixth Circuit has recognized that "[a]bsolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings, including direct appeals, habeas corpus proceedings, and parole proceedings, where the prosecutor is personally involved in the subsequent proceedings and continues his role as an advocate." *Thompson*, 330 F.3d at 799 (citing *Houston v. Partee*, 978 F.2d 362, 365-66 (7th Cir. 1992)). "The burden is on the official seeking protection to prove that absolute immunity is justified." *Thompson*, 330 F.3d at 796.

In the present case, the complaint alleges that "[o]n November 22, 2016, defendant Smith wrote a letter . . . to inform the parole Board 'that this office objects to any early release' of Mr. Brichetto." [Doc. 2 at ¶ 33]. Additionally, the complaint alleges that "the reference to 'this office' implies that the Defamatory Letter was sent at the behest of defendant Johnson, or at the very least

with his approval." [*Id*. at ¶¶ 74, 83, 90, 97, 104, 111, 116, 121, 127, 134, 140, 147]. The letter, attached to the plaintiff's complaint, appears to be written on the Office of the District Attorney General of the Ninth Judicial District's official letterhead, is specifically addressed to Chairman Richard Montgomery of the Tennessee Board of Parole, and is signed by Assistant District Attorney General Tiffany Smith. [Doc. 2-1 at PageID # 74-80]. The letter references inmate John H. Brichetto, the beginning date of his sentence (8/19/2015), the ending date of his sentence (2/4/2025), and the date of the parole hearing (12/13/2016). [*Id*. at PageID # 74]. The letter begins as the plaintiff alleges, stating "[t]his letter is to inform you that this office objects to any early release of Inmate John H. Brichetto, Jr., who will be before you on December 13, 2016, for a Parole Hearing." [*Id*.]. The letter ends with "[f]or these reasons, we respectfully request Inmate Brichetto's parole be denied and Inmate Brichetto serve the balance of his ten (10) year sentence with the Tennessee Department of Corrections. As always, we thank you in advance for the opportunity to be heard . . . ." [*Id*. at PageID # 80].

The Court finds that the defendants have met their burden of showing that they are entitled to absolute prosecutorial immunity from civil liability for § 1983 actions for the statements made in the letter at issue. First, as the plaintiff's complaint seemingly acknowledges, the overt purpose of the letter is clearly within the context of the District Attorney General's Office's objection to early release of Mr. Brichetto. Indeed, the letter appears to be written on official stationary of the District Attorney General's Office, the letter includes the official seal of the State of Tennessee, and it includes defendant Johnson's personal information as the District Attorney General. Further, the letter is plain in its purpose from the beginning, stating unequivocally that the Office of the District Attorney General is objecting to the early release of Mr. Brichetto as the reason for the letter. Additionally, the letter is consistent throughout that the "office" is objecting to Mr.

Brichetto's early release. *See* [*id.* at PageID # 80 ("For these reasons, *we* respectfully request Inmate Brichetto's parole be denied . . . As always, *we* thank you in advance for the opportunity to be heard.") (emphasis added)]. In essence, the overt purpose of the letter speaks for itself.

Secondly, addressing the critical issue of "how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process," *Thompson*, 330 F.3d at 798 (emphasis in original), the language of the letter, coupled with the allegations of the complaint, makes the answer to that question quite clear. As alleged by the plaintiff, defendant Smith was personally involved in the prosecution and ultimate conviction of Mr. Brichetto in the original criminal case. [Doc. 2 at ¶¶ 15-17 and 30]. As the author of the letter, defendant Smith is clearly acting in her prosecutorial role as an advocate in the subsequent parole proceedings of the case. Smith is writing on behalf of the Office of the District Attorney General, and more broadly on behalf of the position of the State of Tennessee, in advocating for the Tennessee Board of Parole to not release Mr. Brichetto from confinement before the expiration of his sentence. The letter outlines the minute details of the conspiracy between the plaintiff and Mr. Brichetto which led to each of their convictions. The letter emphasizes the harm and injury resulting from the conspiracy as support for the District Attorney General's Office's argument for a denial of Mr. Brichetto's early release.

As specific examples, the complaint challenges the statements made in the letter regarding multiple lawsuits which either the plaintiff or Mr. Brichetto (or both) are a party to. [Doc. 2 at ¶¶ 41-63].[9] However, the stated lawsuits are used in the letter in advocating the Office's position as to the early release of Mr. Brichetto. *See e.g.*, [Doc. 2-1 at PageID # 85 ("Inmate Brichetto and

---

[9] The Court recognizes that the plaintiff acknowledges that she had involvement in three of the lawsuits stated in the defendants' letter. [Doc. 32 at PageID # 155 (Plaintiff "does not deny involvement in the cases mentioned in 41, 45, or 50," of the complaint.)].

his wife/co-convicted Defendant Lisa Horn Brichetto have extensive knowledge and experience with the justice/legal system that parallel the offense(s) in this case . . . .")]. Additionally, the complaint challenges the statements made in the letter regarding the facts of the underlying criminal cases, [Doc. 2 at ¶ 64]; however, these statements are likewise made in advocating the Office's position as to the early release of Mr. Brichetto. *See e.g.*, [Doc. 2-1 at PageID 78-79 ("Together, the Brichettos – in word and deed – have manufactured and presented a charade before the Court to distract, confuse, and mask their guilt.")].

Simply, the letter uses the circumstances of the underlying criminal cases, as well as other related facts, in supporting the District Attorney General's Office's position as to the early release of Mr. Brichetto. In the Court's view, there is simply no good faith argument to be made, nor are there sufficient factual allegations contained within the plaintiff's complaint, supporting a position that defendant Smith wrote this letter as anything other than an advocate intimately associated with the criminal proceeding (a post-conviction parole hearing) before her. The statements made about the plaintiff within the letter are intimately tied to the advocacy of the Office's position as to the parole proceeding.

In essence, the letter is exactly what the letter itself overtly purports to be: a letter to the Tennessee Board of Parole from the Office of the District Attorney General of the Ninth Judicial District advocating for a denial of an inmate's early release on parole, an inmate which the Office prosecuted, written by the prosecuting attorney, on behalf of the Office and the victims of the offenses. For these reasons, the Court finds that the defendants are entitled to absolute prosecutorial immunity for the plaintiff's § 1983 claims for the statements made within the letter.

For the foregoing reasons, all of plaintiff's § 1983 claims (Counts I-VIII) will be **DISMISSED** as to these two defendants.[10]

### C. State Law Claims (Counts IX-XII)

The defendants further argue a number of grounds why this Court should dismiss the plaintiff's state law claims as to them. The defendants invoke (1) State-employee immunity, (2) absolute litigation privilege, and (3) that the plaintiff is libel-proof. As alternative grounds, the defendants request the Court to decline to exercise supplemental jurisdiction over the remaining state law claims. The defendants' arguments are taken up in this order.

### i. State-employee Immunity

The defendants aver that "[a]s State employees, Defendants are absolutely immune from liability for any alleged negligent acts or omissions taken within the scope of their employment, as well as for any defamatory statements made in the scope of their employment." [Doc. 27 at PageID # 137]. The plaintiff responds that she is not alleging negligence on the part of the defendants but rather that they used "willful and malicious acts of retaliation and defamation in order to exact revenge for political losses." [Doc. 158 at PageID # 158].

In Tennessee, "[s]uits may be brought against the State in such a manner and in such courts as the Legislature may by law direct." Tenn. Const. art. 1 § 17. In 1984, the Tennessee Legislature passed The Tennessee Claims Commission Act (the "Act") which "broadly waived sovereign immunity for specified claims against the State." *Vetrano v. State*, No. M2015-02474-COA-R3-CV, 2015 WL 3411921, at *1 (Tenn. Ct. App. Aug. 8, 2017) (citing Tenn. Code Ann. § 9-8-307).

The defendants cite to Tennessee Code Annotated § 9-8-307 in claiming absolute immunity as State employees from liability for alleged negligent acts or omissions; the statute states in

---

[10] In accordance with *supra* Discussion II. Motion 1.B.i., absolute prosecutorial immunity is an alternative ground which provides additional justification for the dismissal of Counts I and V.

pertinent part "State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn. Code Ann. § 9-8-307(h). In addition to her argument that the complaint alleges willful and malicious acts on the part of the defendants, the plaintiff further avers that the defendants "were not acting within the scope of their employment, but as politicians and as such are not immune for their willful defamation." [Doc. 32 at PageID # 159].

The plain language of the statute is clear, if the defendants were acting willfully or maliciously, they are not shielded by State-employee immunity. Further, if the defendants were not acting within the scope of their employment, they are not entitled to immunity under this statute.

The easier question is taken first. Addressing the second requirement—whether the defendants were acting within the scope of their employment—the answer is clearly in the affirmative. Indeed, based on the allegations of the complaint, the letter was written by defendant Smith "to inform the Parole Board 'that this office objects to any early release' of Mr. Brichetto." [Doc. 2 at ¶ 33]. Additionally, after review of the letter, there is no doubt it is written on behalf of the District Attorney General's Office, on official letterhead, and that the overt purpose of the letter speaks for itself.[11] The letter was signed by defendant Smith in her official capacity as Assistant District Attorney General, and was written to the Tennessee Board of Parole regarding the early release of Mr. Brichetto. The plaintiff alleges that defendant Johnson agreed with defendant Ruppe to bring the criminal charges against plaintiff and Mr. Brichetto, and also agreed to make the statements within the letter. The plaintiff further alleges that "[o]n information and belief, the

---

[11] *See supra* Discussion II. Motion 1.B.iii.

reference to 'this office' implies that the Defamatory Letter was sent at the behest of defendant Johnson, or at the very least with his approval." [*Id.* at ¶ 127]. Defendant Johnson's alleged connection to the letter is that he agreed to bring the charges against the plaintiff and Mr. Brichetto, and he impliedly approved the letter written by defendant Smith. Additionally, his information as the District Attorney General is included on the letterhead. The plaintiff's argument that the defendants were acting "as politicians," [Doc. 32 at PageID # 159], and therefore not acting within the scope of their employment as prosecutors is simply unsupported by the factual allegations of the complaint. The Court finds that the defendants were undoubtedly acting within the scope of their employment when they wrote (or implicitly approved) the letter to the Tennessee Board of Parole. Additionally, the plaintiff's allegation that "[t]he defendants, at all relevant times, acted under color of state law" seemingly precludes the plaintiff from making the argument that they were not acting in the scope of their employment. [Doc. 2 at ¶ 9].

Having found that the defendants were acting within the scope of their employment, the Court must address the more difficult question of whether the complaint sufficiently alleges a higher degree of culpability than mere negligence. At the outset, Count XII (negligent infliction of emotional distress) is clearly alleging that the defendants were acting negligently.[12] Therefore, the Court finds the defendants enjoy State-employee immunity for this claim, and it will be **DISMISSED** on this ground.

As to the remaining state law claims (Counts IX-XI), the Court finds that the complaint has not alleged sufficient facts to show that the defendants were acting willfully or maliciously in writing the letter to the Tennessee Board of Parole. As to the defamation claim (Count IX) the

---

[12] *See* [Doc. 2 at ¶¶ 144 and 145 ("On information and belief, defendant Smith has a duty to make sure that statements made to the Parole Board are both accurate and confined to the subject of the hearing (Mr. Brichetto in this case). Defendant Smith breached this duty in that she made statements to the Parole Board that are both false and concern Plaintiff.")].

plaintiff alleges that "[o]n information and belief, defendants made the statements in the Defamatory Letter with reckless disregard for the truth of the statements or with negligence in failing to ascertain the truth of the statements." [Doc. 2 at ¶ 126]. Although the complaint consistently alleges that "[t]he Defamatory Letter makes multiple false, denigrating, and injurious statements regarding the plaintiff," [*Id.* at ¶ 64], the complaint makes no factual assertions that the defendants acted willfully or maliciously against the plaintiff in writing and publishing the letter to the Tennessee Board of Parole. The plaintiff does allege that "Defendant Smith intentionally published several false, degrading, and scurrilous statements about Plaintiff," [Doc. 2 at ¶ 137], however, this single generalized allegation, unsupported by any factual assertions, is far from sufficient to show that the defendants acted willfully or maliciously. There are simply no factual allegations—nor sufficiently alleged implications—that the defendants acted willfully or maliciously in writing or approving the letter. All of the plaintiff's allegations as to this issue are simply conclusory. Therefore, the defendants are entitled to State-employee immunity as to the remaining state law claims (Counts IX-XI), and these claims will be **DISMISSED** on these grounds.

### ii.       Absolute Litigation Privilege

The defendants additionally argue that the statements made in the letter are entitled to absolute litigation privilege. The plaintiff disagrees, referring to her previous argument as to State-employee immunity, arguing that the letter was "not within the scope of 'litigation'" and that her conduct was not relevant nor pertinent in determining whether to parole Mr. Brichetto. [Doc. 32 at PageID # 159].

Tennessee courts have recognized that "statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged and therefore

cannot be used as a basis for a libel action for damages." *Jones v. Trice*, 360 S.W.2d 48, 50 (Tenn. 1962); *see also Issa v. Benson*, 420 S.W.3d 23, 28 (Tenn. Ct. App. 2013). There are two questions presented to this Court: (1) whether a prosecutor advocating at a parole proceeding constitutes a "judicial proceeding" within the litigation privilege context; and, if so, (2) whether the statements made in the letter were "relevant and pertinent" to the issues of Mr. Brichetto's parole. The Court finds in the affirmative on both questions.

First, although neither party has provided any case law in support of their position, the Court concludes that a prosecutor advocating at a parole proceeding constitutes a "judicial proceeding" based on the facts of the instant case. To begin with, the Court will consider the general purpose of a parole hearing in Tennessee. Although "[p]risoners do not have an absolute right to be released on parole," a prisoner may apply for judicial review of a parole decision. *Breenan v. Board of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017). In determining whether to parole an inmate, the Tennessee Board of Parole is required to consider a number of factors, some of which include the "views of the community, victims of the crime or their family, institutional staff, probation and parole officers, or other interested parties." *Id.* at 876 n.5.

Both the fact that a parole decision is judicially reviewable—albeit with a particularly deferential standard, *see Brennan*, 512 S.W.3d at 873 (reviewing a decision made by the Tennessee Board of Parole in a limited sense, only "to consider[ ] whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently.")—and the fact that the Tennessee Board of Parole is *required* to consider the views of the community or other interested parties, each support a finding that a parole proceeding is a "judicial proceeding" for purposes of the litigation privilege.[13]

---

[13] Such a finding is also supported by the underlying purpose of the litigation privilege in "that access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he has been wronged thereby." *Jones*, 360 S.W.2d at 541.

It would be contrary to the purpose of the litigation privilege to chill a prosecutor's objection to an early parole, on behalf of the community, for fear of liability to civil suit. And the words of the letter in this case further support this Court's conclusion, for there is no question that the prosecutor is advocating on behalf of the community of Morgan County, and the citizens of Tennessee at large in objecting the Mr. Brichetto's early release. In considering these principles and the particular facts of this case, the Court finds that the parole proceeding at issue here was a "judicial proceeding" for purposes of the absolute litigation privilege.

Secondly, the Court must determine whether the statements made about the plaintiff in the letter were "relevant and pertinent" to the issues of Mr. Brichetto's parole; the Court finds that they were. Indeed, the letter never makes any specific reference to the plaintiff without including Mr. Brichetto. The plaintiff does not provide any facts within her complaint suggesting that the letter singled her out apart from Mr. Brichetto. Without doubt, the letter consistently refers to the parties as either Inmate Brichetto, the Brichettos, or Inmate Brichetto and his wife/co-convicted Defendant Lisa Horn Brichetto. The letter makes no reference to any fact which is only related to the plaintiff and not Mr. Brichetto. The Court finds that all of the statements made in the letter are "relevant and pertinent" to the issues of Mr. Brichetto's parole.

Based on the foregoing, the Court finds that the statements made in the letter are "statements made in the course of judicial proceedings which are relevant and pertinent to the issues." *Jones*, 360 S.W.2d at 50. Therefore, the statements are absolutely privileged. The plaintiff's state law tort claims for publication of the injurious statements, including Count IX

(defamation) and Count X (false light invasion of privacy)[14] will be **DISMISSED** on these grounds.[15]

### iii.    Libel-Proof Plaintiff

As an additional argument for dismissal of the plaintiff's state law defamation claims, the defendants argue that the plaintiff is libel-proof.  The plaintiff avers that the libel-proof doctrine does not apply to her because she is in diversion.

The libel-proof doctrine is a concept that "a notorious person is without a 'good name' and therefore may not recover for injury to it."  *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).  In essence, "the basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation," and logically "a person without reputation has nothing for the law of defamation to protect."  *Id.*

After reviewing the parties' arguments, the Court is not inclined to dismiss the plaintiff's defamation claims on these grounds.  Indeed, there is some suggestion in the case law that a convicted felon is "unlikely to be able to recover damages to his reputation," *Ray v. Time, Inc.*, 452 F. Supp 618, 622 (W.D. Tenn. 1976), however, the facts of this case are distinguished from the *Ray* case.  Indeed, the plaintiff in that case was infamous in every sense of the word, notorious for his participation in the murder of Dr. Martin Luther King, Jr., while here the only fact which this Court may consider is that the plaintiff has been admittedly convicted of a felony which resulted in a sentence of diversion.  Otherwise, the Court has been unable to find any application of the libel-proof doctrine directly on point, and the parties have not provided any other substantive authority of their own.

---

[14] *See West v. Medial Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001) (affirming that absolute litigation privilege, among other privileges, applies to false light invasion of privacy torts).

[15] In accordance with *supra* Discussion II. Motion I.C.i., absolute litigation privilege is an alternative ground which provides additional justification for the dismissal of Counts IX and X.

In all, the Court finds that the plaintiff is not libel-proof based on the facts alleged in her complaint, and will **DENY** the defendants' motion based on these grounds.

### D.  The Exercise of Supplemental Jurisdiction

As a final consideration, the defendants argue that this Court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims if it dismisses the § 1983 actions which give rise to this Court's original jurisdiction.  Based on the findings above, the Court need not consider the defendants' argument here, and it will be **DENIED AS MOOT**.

### E.  Conclusion as to Defendants Tiffany Smith and Russell Johnson's Motion to Dismiss

For the foregoing reasons, the defendants' motion to dismiss, [Doc. 26], is **DENIED IN PART and GRANTED IN PART**.  As to plaintiff's § 1983 claims, the defendants are entitled to Eleventh Amendment Immunity for all potential claims the plaintiff has brought seeking monetary damages from the defendants in their official capacity, and such claims are hereby **DISMISSED**. Further, as to defendants' motion to dismiss the plaintiff's § 1983 claims for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the motion is **GRANTED** as to Counts I and V, and **DENIED** as to Counts II, III, VI, and VII.  Accordingly, Counts I and V are hereby **DISMISSED** on such grounds.  Further, as to the defendants' motion to dismiss the plaintiff's § 1983 claims based on absolute prosecutorial immunity, the motion is **GRANTED** and Counts I-VIII are hereby **DISMISSED** as to these defendants on this ground.

Further, as to defendants' motion to dismiss the plaintiff's state law claims based on State-employee immunity, the motion is **GRANTED** and Counts IX-XII are hereby **DISMISSED** on this ground.  Further, as to defendants' motion to dismiss the plaintiff's state law claims based on absolute litigation privilege, the motion is **GRANTED** and Counts IX and X are **DISMISSED** on

this ground.  Further, as to defendants' motion to dismiss the plaintiff's state law claims based on the libel-proof doctrine, such request is **DENIED**.  The defendants' request for this Court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims is **DENIED AS MOOT**.

In accordance with the findings above, all asserted claims against these two defendants are **DISMISSED**.

### MOTION 2.   John Brichetto's Motion to Intervene

On May 23, 2018, John Brichetto, the plaintiff's husband, filed a motion to intervene in this case pursuant to Rule 24 of the Federal Rules of Civil Procedure, [Doc. 31].  Mr. Brichetto avers that "he has claims that share a common question of law and fact with the plaintiff."  [*Id*. at PageID # 151].  This Court has previously denied the plaintiff's motion to amend her complaint to add Mr. Brichetto as a plaintiff, *see* [Doc. 15].

Rule 24 of the Federal Rules of Civil Procedure provides two avenues by which a non-party may intervene in a case.  First, the Rule provides that "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a).  Additionally, the Rule allows a court to "permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  This second avenue is commonly referred to as permissive intervention.

Here, Mr. Brichetto provides no argument that this Court *must* permit him to intervene, *i.e.* there is nothing to suggest that he has an unconditional right to intervene, nor does he argue that his claim to the subject of the action is so situated that disposing of the action may impair or impede his ability to protect his interest. The movant only provides that each claim asserted by his wife applies equally to him, excepting her claims for emotional distress. In essence, he seeks permissive intervention.

In considering whether to allow a party to permissively intervene, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991) (quoting *Bradley v. Milliken*, 828 F.2d 1186, 1193-94 (6th Cir. 1987)). "To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact. *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). "Once these two requirements are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*.

The Court must consider all the circumstances when determining whether a motion to intervene is timely, including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). In the present case, Mr. Brichetto filed his motion to intervene on May 23, 2018, over one year after the complaint was originally

filed in this matter. This is a significant amount of time; however, the Court recognizes that issues with the filing fee as well as the plaintiff's request for more time to effect service of process on the defendants and the defendants' request for more time to respond to the complaint, among other reasons, has made this case take significantly more time to get moving than the typical civil case in this Court. Additionally, on February 7, 2018, the plaintiff attempted to amend her complaint, [Doc. 20], to add Mr. Brichetto as a plaintiff in this lawsuit. The Court originally denied the plaintiff's motion, [Doc. 15]. The plaintiff moved for reconsideration, which the Court also denied. In that order filed on April 4, 2018, the Court indicated that the correct procedural vehicle for Mr. Brichetto to attempt becoming a plaintiff in this case was via a motion to intervene, [Doc. 21].

This lawsuit has not substantially progressed at this point. Indeed, the record reflects that a Rule 26(f) conference has been held,[16] but the parties have not filed the required report from this conference. Looking to the record, little, if any, discovery has taken place in this case. In essence, even though this case is nearly two years old, it has not significantly progressed, which is a factor supporting a finding of timeliness regarding Mr. Brichetto's motion.

However, many of the other factors this Court should consider weigh against a finding of timeliness in Mr. Brichetto's motion. Indeed, there is little doubt that Mr. Brichetto knew, or at the very least should have known, of his interest in the case when it was originally filed by his wife on April 25, 2017. Indeed, as the plaintiff avers, Mr. Brichetto and the plaintiff are involved in at least three other lawsuits together, and the letter at issue in this case was written as part of Mr. Brichetto's own parole hearing. Additionally, having now dismissed defendants Tiffany Smith and Russell Johnson, it would be inappropriate to allow Mr. Brichetto's intervention as the

---

[16] It appears from the record that not all parties were in attendance for the Rule 26(f) conference.

means by which to require their continued participation in this litigation.  Also, if indeed "each claim that applies to the original Plaintiff . . . applies to him," [Doc. 31 at PageID # 151, then the above reasoning dismissing defendants Smith and Johnson would likely apply equally to Mr. Brichetto's claims.  The defendants would experience prejudice for having to defend the same claims—brought a second time—while they have already successfully defended these claims brought by the original plaintiff.  The purpose for Mr. Brichetto's intervention is unclear, for he is free to file his own lawsuit for any damages he sustained as a result of the defendants' actions, and is not required to intervene in this lawsuit to advance his own interests.

As to the second requirement that a proposed intervenor must show—that his claims share at least one common question of law or fact with the original lawsuit—Mr. Brichetto has minimally alleged that there is a common question of law or fact with his interest and the current plaintiff's lawsuit.  In his motion, Mr. Brichetto does argue that "each claim that applies to the original Plaintiff, who is also his wife, applies to him, excepting claims for emotional distress." [Doc. 31 at PageID # 151].  Indeed, the plaintiff's original claims revolve around the letter sent to the Tennessee Board of Parole regarding the early release of Mr. Brichetto, and it appears from his filing that, through intervention, he is attempting to assert the same claims that the original plaintiff has asserted in this lawsuit.

In any event, the proposed intervenor in this case has not established—nor even made any mention of—the timeliness of his request to intervene, a requirement he must show to intervene permissively.  The Court finds that Mr. Brichetto has not shown that his motion is timely.  Further, for the reasons outlined above, the Court finds the motion is in fact not timely, and therefore should be **DENIED** on this basis.

Additionally, even if the motion was found to be timely brought, this Court's balancing of the other factors would nevertheless lead to a finding that allowing Mr. Brichetto to intervene at this stage of the lawsuit would be inappropriate. Indeed, as mentioned above, the defendants would undoubtedly suffer prejudice for having to defend against Mr. Brichetto's claims after they had successfully defended against the original plaintiff's complaint. These claims, if brought by Mr. Brichetto, would likely be susceptible to the same arguments made in the defendants' motion to dismiss, and would likely require dismissal for the same reasons. This could potentially waste valuable judicial resources. Further, the case would experience some undue delay—albeit not unreasonably significant—in allowing Mr. Brichetto to intervene nearly two years after the original complaint was filed, even though the case is still in its procedural infancy. Further, Mr. Brichetto waited a significant amount of time to move for intervention, after knowing or having reason to know of his interest in this case. Considering the record as a whole, as well as the reasons stated in Mr. Brichetto's motion, the balance of prejudice to the original parties as well as the other factors relevant to intervention weigh significantly against the allowance of Mr. Brichetto's intervention. In the Court's view, Mr. Brichetto's intervention at this time would simply not be appropriate. Therefore, the motion to intervene, [Doc. 31], will be **DENIED** on this basis as well.

### MOTION 3. Plaintiff's Objection to Magistrate Judge's Order Quashing Subpoena and Motion to Reconsider

The plaintiff has filed an objection to the Magistrate Judge's Order quashing subpoena and motion to reconsider, [Doc. 38]. On May 3, 2018, Justin P. Wilson, Comptroller of the Treasury of the State of Tennessee, a non-party to this action, filed a motion to quash subpoena, [Doc. 28]. In support of the motion, the non-party argued that the plaintiff's subpoena requested the production of documents which were not relevant to this lawsuit and, in any event, would be

duplicative because they had previously been produced to plaintiff during discovery in her criminal case. [Doc. 29 at PageID # 142]. The plaintiff did not respond timely to the non-party motion. On June 25, 2018, the Magistrate Judge entered a Memorandum and Order granting the non-party's motion to quash subpoena, [Doc. 35]. That same day, the plaintiff filed a response to the non-party motion, [Doc. 37].

Fourteen days later, the plaintiff filed the instant objection to the Magistrate Judge's Memorandum and Order, objecting to it "in its' [sic] entirety." [Doc. 38 at PageID # 194]. The plaintiff argues the following in support of her objection:

> While several other motions remained pending, this motion was ruled upon with no warning to the *pro se* Plaintiff that she had a deadline to respond . . . . The Federal Rules of Civil Procedure do not provide a standard time for the filing of oppositions to motions. Despite many conversations with clerks, [plaintiff] has never been provided a copy of the local rules. Plaintiff's response was actually filed the same day as the Order, though it likely had been waiting to be entered by the clerks for a number of days. In any event, Plaintiff **did** file a response. Accordingly, reconsideration is warranted to give Plaintiff an opportunity to be heard and avoid clear error and/or manifest injustice.

[*Id*.]. The day after the plaintiff filed her objection and motion for reconsideration, the non-party responded, [Doc. 39].

The Court will first take up the plaintiff's objection to the Magistrate Judge's Memorandum and Order. Afterwards, the Court will address the plaintiff's motion for reconsideration.

This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02. Rule 72 of the Federal Rules of Civil Procedure provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a). "The 'clearly erroneous' standard applies only to the magistrate judge's findings of fact." *Universal Settlements Intern., Inc. v. Nat'l Viatical, Inc.*, No. 1:07-CV-1243, 2008 WL 5156642, at *1 (W.D. Mich. Dec. 8, 2008) (citing *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Adams Cty. Reg'l Water Dist. v. Village Of Manchester, Ohio*, 226 F.3d 513, 517 (6th Cir. 2000)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Peterson v. Burris*, Case No. 14-CV-13000, 2015 WL 7755402, at *1 (E.D. Mich. Dec. 2, 2015). Applying the standards set out above to the instant motion, the Court finds that nothing in the Magistrate Judge's Memorandum and Order is clearly erroneous or contrary to law.

To begin with, there is no dispute that the plaintiff failed to timely respond to the non-party's motion to quash subpoena. The non-party's motion was filed on May 3, 2018, [Doc. 28]. Therefore, the plaintiff was required to respond to the motion on or before May 17, 2018. Plaintiff waited 53 days to file any response to the non-party's motion. The Magistrate Judge did observe that the plaintiff had not responded to the motion, however, the Magistrate Judge also considered the underlying merits of the non-party's motion. *See* [Doc. 35]. Indeed, in making a final ruling on the matter, the Magistrate Judge held that "[a]ccordingly, in light of Plaintiff's lack of response and Wilson's arguments set forth above, the Court hereby **GRANTS** the Non-Party's Motion to Quash Subpoena [**Doc. 28**]." [Doc. 35].

Additionally, although *pro se* parties are not held to the same standards as parties represented by counsel, they must still comply with the procedural rules that govern civil cases.

As with all other parties practicing in this Court, *pro se* and represented alike, the Court expects—and requires—adherence to the Federal Rules of Civil Procedure as well as this Court's Local Rules. The plaintiff's excuse that "[d]espite many conversations with clerks, [plaintiff] has never been provided a copy of the local rules," [Doc. 38 at PageID # 195], is problematic for a number of reasons. First of all, the Court's Local Rules are publicly available to all via the Court's website, www.tned.uscourts.gov, and are further available in hard copy form upon request from the Clerk's Office after payment for copies. Secondly, the Clerk's Office is not responsible to ensure that each party of every case in this District is provided a copy of the Local Rules; rather, it is the individual party who is responsible for abiding by these Rules, and ensuring that they are fully aware of the requirements of this Court. In essence, the plaintiff's excuse is just that, an excuse, and is not a justification for failing to file her response to the non-party's motion on time.

Next, the Magistrate Judge determined that the merits of the non-party's motion warranted quashing the subpoena, and the plaintiff has not provided any reason, in her response, objection and motion, or otherwise, showing that this finding was clearly erroneous or contrary to law. Indeed, the Magistrate Judge accepted the non-party's argument that the requested documents were not relevant in this case, and this finding was not clearly erroneous. There is nothing which leaves this Court with the "definite and firm conviction that a mistake has been made," *U.S. Gypsum Co.*, 333 U.S. at 395, in quashing a subpoena seeking documents from 2008 to 2011 regarding the instant lawsuit, which revolves entirely around the letter sent to the Tennessee Board of Parole in 2016. Additionally, the non-party provided, and the Magistrate Judge accepted, that he produced all such documents to General Smith's office in February 2015, with the belief that such documents would have been provided to plaintiff pursuant to Rule 16 of the Tennessee Rules of Criminal Procedure. This finding, as well, is not clearly erroneous.

Nor has the Magistrate Judge "misapplie[d] relevant statutes, case law, or rules of procedure." *Peterson*, 2015 WL 7755402, at *1. Indeed the Memorandum and Order correctly set out the pertinent rule for quashing a subpoena and determining whether a subpoena subjects a person to an undue burden. After careful review, nothing here is contrary to law.

Finally, the plaintiff's arguments regarding standing are simply without merit. The non-party himself advanced the motion, through counsel, and it is of no significant consequence, in this Court's view, that such counsel represents some named defendants in this lawsuit. Additionally, the affidavit supporting the motion is signed by the non-party. It is the non-party who is subject to the requirements of the subpoena, and there is no question that he has standing to quash. The plaintiff's standing argument is unavailing.

After review, the Courts finds that the Magistrate Judge's order quashing the non-party subpoena is not clearly erroneous nor contrary to law. Therefore, the plaintiff's objection is **OVERRULLED**.

Regarding the plaintiff's motion for reconsideration, the same standard applies, rendering the same result. "[28] U.S.C. § 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The district court applies the "'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A)," and the district court applies the de novo standard for "'dispositive motions' excepted from § 636(b)(1)(A), such as motions for summary judgment or for the suppression of evidence." *Id.* Therefore, the "clearly erroneous or contrary to law" standard applies to the plaintiff's motion for reconsideration of the Magistrate Judge's Memorandum and Order in the present case, as it dealt with a

nondispositive issue. The above reasoning applies in full, and the plaintiff's motion for reconsideration is **DENIED**.

### MOTION 4. Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction

The plaintiff further moves for a temporary restraining order and/or a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining the defendants and others from advancing a conspiracy to retaliate against the plaintiff, [Doc. 43]. The motion is filed on behalf of the plaintiff and her husband, Mr. John Brichetto as intervenor plaintiff. Mr. Brichetto has submitted a declaration in support of the motion, [Doc. 44]. Mr. Brichetto is not a party to this lawsuit, *see supra* Discussion II. Motion 2.; therefore, his Declaration, as well as his request for relief, will not be considered. The Court will only consider the request on behalf of the plaintiff as a party to this lawsuit. In light of this Court's findings above, many of the plaintiff's arguments in support of her motion for a temporary restraining order and preliminary injunction are now inapplicable. Indeed, defendants Smith and Johnson have been dismissed from this lawsuit, and therefore have no pending claims against them by the plaintiff in this Court. Thus, this Court must primarily consider whether the plaintiff is entitled to a temporary restraining order or a preliminary injunction against the single remaining defendant, Becky Ruppe.

As to the plaintiff's request for a temporary restraining order, the plaintiff has failed to show that the circumstances warrant the issuance of a such an order. Rule 65 of the Federal Rules of Civil Procedure outlines the procedure by which a court may issue a preliminary injunction or a temporary restraining order. Traditionally, a temporary restraining order is issued without written or oral notice to the adverse party. In such instances, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A)

specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). "[E]x parte restraining orders should be limited to preserving the status quo only for so long as is necessary to hold a hearing." *First Tech. Safety Sys. Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).

Although the plaintiff's motion includes in the title a request for a temporary restraining order, after immediate review and consideration, the Court was not able to find any justification, nor argument from the plaintiff, that she was requesting an *ex parte* injunction. Neither was there any indication that the plaintiff attempted, and was unsuccessful, in contacting the adverse parties. Indeed, the plaintiff's request was made on August 9, 2018, well over a year after she originally filed her complaint; the request for the injunction relates directly to the issues raised in the plaintiff's complaint. Additionally, the plaintiff had already served process on defendants when she filed her instant motion. The plaintiff's motion seeks an injunction directed squarely to the named defendants. [Doc. 43 ("Plaintiff[] respectfully seek[s] a Temporary Restraining Order and/or Preliminary Injunction restraining and enjoining Defendants—as well as their agents, employees, successor, and attorneys, and all persons in active concert and participation with them . . . .")]. Therefore, the plaintiff advanced no justification—and the Court saw none—for the issuance of an *ex parte* order without giving the defendants opportunity to respond. Accordingly, the Court allowed the defendants sufficient opportunity to respond to the plaintiff's motion before ruling on the matter. The Court finds that an *ex parte* Temporary Restraining Order is simply not justified under the circumstances presented by the plaintiff's motion. Indeed, the plaintiff's arguments treat the motion more appropriately as a motion for a preliminary injunction, and this

Court will consider the motion as such.  *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002) (treating a plaintiff's motion for temporary injunction as "tantamount to a motion for a preliminary injunction.").

The parties have now had opportunity to respond.  The record reveals that the defendants have not responded to the plaintiff's motion.  Accordingly, the Court will consider whether a preliminary injunction is warranted.

> When determining the appropriateness of a preliminary injunction, a court must examine four factors.  First, the court must determine whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim.  Second, the court will determine whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue.  Third, the court determines whether the injunction would cause substantial harm to others.  And finally, a court must consider whether the public interest would be served if the court were to grant the requested injunction.

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014) (internal quotations and citations omitted).  The Court must consider each of these four factors; they should be "balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction."  *Id.* (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).  "A preliminary injunction is an *extraordinary remedy* which should be granted *only if* the movant carries his or her burden of proving that the circumstances clearly demand it.  *Overstreet*, 305 F.3d at 753 (emphasis added).  Further,

> When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor.  With regard to the factor of irreparable injury, for example, it is well-established that "loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury."

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)).  "In cases implicating the First Amendment, the other three factors often hinge on this first factor."  *Liberty Coins, LLC*, 748 F.3d at 690.

### A. Substantial Likelihood of Success on the Merits

The plaintiff must first establish that she has a substantial likelihood or probability of success on the merits of her claim. In support of her motion for a preliminary injunction, the plaintiff sets out the elements of a § 1983 First Amendment retaliation claim, and simply states that "Plaintiffs are very likely to prevail under this standard." *See* [Doc. 45 at PageID # 259-60]. The Court is not persuaded.

To begin with, referring to the analysis above, *see supra* Discussion II. Motion 1., the plaintiff has failed to state a claim, in a variety of ways, upon which this Court may grant relief against defendants Smith and Johnson. Further, as to defendant Ruppe, the plaintiff has not alleged sufficient facts to show that her speech (either through the filing of civil lawsuits or statements she made to the press) was a motivating factor in any decision for Ruppe to conspire with defendants Smith and Johnson to write the letter. Indeed, the plaintiff's argument largely breaks down when applied to Ruppe, for she has not alleged that Ruppe was the author of the letter or directly involved in the development of the letter. Rather, the only allegations (factual or otherwise) linking Ruppe to the letter is that she conspired with Johnson and Smith to make false statements in the letter to retaliate against the plaintiff for her protected speech and use of the courts. The link between Ruppe and the letter sent to the Tennessee Board of Parole is too attenuated to provide a substantial likelihood of success on the merits of the plaintiff's claims. It is largely anyone's guess as to how Ruppe is directly connected with the writing of the letter, and in any event, the letter is written on behalf of the District Attorney General's Office, without any mention of Ruppe. The lack of factual allegations in the plaintiff's complaint leads this Court to find that the plaintiff has failed to establish that she has a substantial likelihood of success on the merits of her claims.

### B. Irreparable Injury

The Court must secondly consider whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue. In the present case, the plaintiff argues that she is threatened with irreparable injury. Specifically, she argues that she has alleged that the defendants have retaliated against her "in order to intimidate [her] into dropping suit. The specific retaliatory [sic] takes the form of a Parole sanction against Mr. Brichetto, that increases the likelihood of his return to prison . . . Mrs. Brichetto would be irreparably harmed by the loss of consortium . . . ." [Doc. 45 at PageID # 258]. The Court does not find this factor as supportive of a preliminary injunction. Although well aware that the Sixth Circuit has found that "[w]ith regard to the factor of irreparable injury . . . it is well-established that loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury," *Connection Distrib. Co.*, 154 F.3d at 288 (quotations omitted), here this factor necessarily hinges on the first factor. *See Liberty Coins, LLC*, 748 F.3d at 690. Indeed, the lack of factual connection between the remaining defendant Ruppe and the letter makes it impossible for this Court to find that the plaintiff will suffer irreparable harm if it does not enjoin Ruppe at this stage of the lawsuit. Indeed, the plaintiff has not suggested, or argued otherwise, that Ruppe has or intends to write a letter to the Tennessee Board of Parole on her own volition. Neither are there sufficient allegations that Ruppe's continued alleged conspiracy without others is in violation of plaintiff's constitutional rights.

Further, the argument that the plaintiff does advance in her motion, in that she will be irreparably harmed if the defendants continue to retaliate against her by sanctioning her husband in requiring him to return to prison and her loss of consortium from such action, is simply out of context. Indeed, it is well understood that "[p]risoners do not have an absolute right to be released on parole," and that "[p]arole is a privilege, not a right." *Brennan v. Board of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017). The fact that Mr. Brichetto may be denied parole in the future has no

bearing on whether the defendant's actions, if continued, would cause irreparable injury. Indeed, even if this Court were to enjoin the defendants as the plaintiff requests, such an injunction would have absolutely no binding effect on the decision of the Tennessee Board of Parole on whether to ultimately approve or deny Mr. Brichetto's early release on parole. As a final note, even if there were some showing of irreparable injury to the plaintiff if this Court did not issue a preliminary injunction, the other three factors for considering the issuance of a preliminary injunction *demonstratively* outweigh any possible irreparable injury the plaintiff may have presented.

### C.  Substantial Harm to Others

The third factor this Court considers is the substantial harm to others if a preliminary injunction were to issue. The plaintiff argues that, when considering "the present suffering of the plaintiff[] and the potential suffering if the sanction results in a return to prison" against "the 'sufferings' the defendants will experience if the court grants the order," the balance of hardships favors the plaintiff. [Doc. 45 at PageID # 259]. Again, the Court disagrees.

To begin with, the injunction the plaintiff seeks would not, as the plaintiff puts it, end "the present suffering of the plaintiff and the potential suffering if the sanction results in a return to prison." [*Id.*]. The Court assumes that the plaintiff is arguing that, without the requested preliminary injunction, the defendants will require Mr. Brichetto to continue to serve his time in prison rather than being released on early parole. However, the plaintiff's argument relies on the same fallacy as her previous argument, for any injunction this Court would issue would have no bearing on whether the Tennessee Board of Parole ultimately allows or denies Mr. Brichetto's early release on parole. Indeed, the "suffering" the plaintiff relies on has no application to the present motion, for even if this Court granted the plaintiff's request for a preliminary injunction, and enjoined the defendants from writing any further letters to the Tennessee Board of Parole

47

which contained false material, the Tennessee Board of Parole would still have ultimate authority in determining whether Mr. Brichetto were to remain in prison or be released early on parole.

Further, in addressing the actual consideration of this factor, that is, the substantial harm *to others* if a preliminary injunction were to issue, the Court finds that this factor substantially weighs against the entry of a preliminary injunction. The plaintiff's request, in essence, would necessarily hinder the District Attorney General's Office from advocating the position of the community and the victims of offenses at Mr. Brichetto's future parole hearings. This Court is not inclined to boisterously impose itself into the State of Tennessee's strong interest in its criminal processes. The preliminary injunction the plaintiff requests would act to chill the voice of the prosecutor, who speaks on behalf of the citizens of Tennessee, in a criminal proceeding. The potential harm to the defendants such an injunction could produce is readily apparent. Indeed, even though defendant Smith and Johnson are now dismissed from this lawsuit, any injunction this Court were to issue would likely have at least some ultimate effect on their role as advocates in any of Mr. Brichetto's future parole proceedings.

### D.  Public Interest

Lastly, the Court must consider whether the public interest would be served if the Court were to grant the preliminary injunction. The plaintiff argues that "it is always in the public interest for state officials to obey the law, especially the Constitution." [Doc. 45 at PageID # 261]. The Court agrees with this general statement, yet has serious doubts as to its implications in the present case. Here, the Court finds that, while the public clearly has interest in vindicating constitutional rights, it is unlikely that the plaintiff can demonstrate that any constitutional rights are implicated on these facts. This Court's discussion above makes this point readily apparent, and need not be rehashed. Secondly, the public has a substantial interest in ensuring that prosecutors perform their

duties without unreasonable restraint. This interest overlaps with the public policy considerations of the application of absolute immunity for prosecutors. *See generally Imbler v. Pachtman*, 424 U.S. 409 (1976). Indeed, enjoining the defendants generally from advocating to the Tennessee Board of Parole would not serve the public interest. Neither would an injunction which simply enjoins defendant Ruppe from continuing to conspire with defendants Smith and Johnson serve any public interest this Court can perceive based on the facts of this case.

### E. Conclusion

In considering all of the above factors, the Court finds that entry of the preliminary injunction requested by the plaintiff would be inappropriate. Therefore, the plaintiff's motion for a preliminary injunction is **DENIED**.

### MOTION 5.     Plaintiff's Motion to Collect Cost of Service

The plaintiff has also moved to collect the cost of service of defendant Becky Ruppe. The plaintiff seeks an order of this Court commanding defendant Ruppe to pay $75.00 to the plaintiff for the expenses she incurred in serving process. The defendant has not responded to the plaintiff's motion.

Rule 4(d) of the Federal Rules of Civil Procedure provides that

An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:
   (A) be in writing and be addressed:
      (i)     to the individual defendant; or
      (ii)    for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
   (B) name the court where the complaint is filed;
   (C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

     (D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

     (E) state the date when the request is sent;

     (F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

     (G) be sent by first-class mail or other reliable means.

Fed. R. Civ. P. 4(d)(1). The effect of a plaintiff properly following this rule is that "[i]f a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. 4(d)(2).

Here, the plaintiff argues that on February 16, 2018 she

> [M]ailed each defendant a "Waiver of Service of Summons" form, which informed them that a law suit had been initiated against them and requested that each defendant waive service. [] The waiver form informed each Defendant that they were allowed 30 days from February 16, 2018 to file the executed waiver form and if they failed to do so, the Plaintiff would take "appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you . . . to pay the full costs of such service." [] On April 10, 2018, the Plaintiff obtained a summons for Defendant Ruppe and hired a process server to personally serve Defendant Ruppe. Defendant Ruppe failed to sign the waiver and was served by a process server on April 19, 2018 at a cost of $75.00.

[Doc. 59].

The Court finds the plaintiff's showing is inadequate to justify imposition of these costs on defendant Ruppe at this time. The Rule is particularly specific in what is required for a waiver to be properly effected, and the Court is unable to determine whether the Rule was fully complied with based on the representations made in the plaintiff's motion. For example, the notice and request must have named the court where the complaint was filed, and further must have been accompanied by a copy of the complaint, 2 copies of the waiver form, and a prepaid means for

returning the form. *See* Rule 4(d)(1). The representations in the plaintiff's motion are largely silent as to whether these requirements were met, as well as others.

As such, this Court cannot determine, based on the plaintiff's current motion, whether the plaintiff is entitled to the expenses she incurred in serving defendant Ruppe. Therefore, the Court will **DENY** the plaintiff's motion, without prejudice to her refiling of a similar motion, if she is so inclined, which includes certifications that all of the requirements of Rule 4(d)(1) were properly adhered to.

**MOTION 6.     Defendant Becky Ruppe's Motion to Set Aside Entry of Default**

The defendant Becky Ruppe has moved this Court to set aside the Clerk's entry of default against the defendant in this matter, pursuant to Federal Rule of Civil Procedure 60. The defendant argues a number of grounds in support of her request. First, the defendant argues that she originally believed she was not required to respond to the plaintiff's complaint because she did not help write the letter, but after consultation with counsel, she was informed a response was necessary but was too late. Further, she states that nothing in the complaint implicates her in the causes of action alleged to have damaged the plaintiff. Additionally, she argues that none of the plaintiff's assertions tie her to the letter, and that plaintiff will not be prejudiced in any way from withdrawal of the Clerk's entry of Default. Finally, the defendant argues that she has a meritorious defense to the merits of the case. The plaintiff has not responded to the defendant's motion.

After careful consideration of the arguments and representations of the defendant's motion, in addition to consideration of the procedural posture and record of this case, the Court finds that the defendant has provided sufficient good cause to set aside the Clerk's entry of Default. Therefore, the defendant's motion to set aside the Clerk's entry of Default against her is **GRANTED**, and such default is **SET ASIDE**.

**MOTION 7.** **Defendants Tiffany Smith and Russell Johnson's Motion to Stay Compliance with Order**

Based on the above findings, defendants Tiffany Smith and Russell Johnson's motion to stay compliance with this Court's case management order, [Doc. 63], is **DENIED AS MOOT**.

## III. CONCLUSION

The following is hereby **ORDERED**:

(1) as to Defendants Tiffany Smith and Russell Johnson's Motion to Dismiss, [Doc. 26], the motion is **GRANTED IN PART and DENIED IN PART**, and in accordance with above findings, these two defendants are **DISMISSED**;

(2) as to John Brichetto's motion to intervene, [Doc. 31], said motion is **DENIED**;

(3) as to Plaintiff's Objection to Magistrate Judge's Memorandum and Order Quashing Subpoena and Motion to Reconsider, [Doc. 38], said Objection is **OVERRULLED** and said Motion is **DENIED**;

(4) as to Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction, [Doc. 43], said motion is **DENIED**;

(5) as to Plaintiff's Motion to Collect Cost of Service, [Doc. 59], said motion is **DENIED WITHOUT PREJUDICE**;

(6) as to Defendant Becky Ruppe's Motion to Set Aside Clerk's Entry of Default, [Doc. 62], said motion is **GRANTED** and the Clerk's entry of Default against this Defendant, [Doc. 55], is **SET ASIDE**; and

(7) as to Defendants Tiffany Smith and Russell Johnson's Motion to Stay Compliance with Order, [Doc. 63], said motion is **DENIED AS MOOT**.

ENTER:

                                      s/J. RONNIE GREER

                           UNITED STATES DISTRICT JUDGE